Mr..Justice Coleock
delivered the opinion of the court.
On the first ground, the court are unanimously of opinion, that the witness was properly rejected. There is no instance in which a negro has been permitted to give evi- *436 tiene*;, except in cases of absolute and indispensable necea-• sitv. nor indeed has this court ever recognised the propriety of admitting them in an}' case v/here the rights of white persons were '"oncerned. When we consider the degraded state in width they are placed by the laws of the state, and the Ignorance in which most of them are reared, it would be unreasonable as well as impolitic to lay it down ás a general rule that they were competent witnesses.
On the second ground, the jury were instructed, that il: was .heir province to decide, whether the testator was of sound mind. 1 stated to them that the rules of law were, first, that soundness being the natural state of the human mind, insanity was not to be presumed, but that if proved to have existed before the making of a will, it was incumbent on those who wished to support the will to prove that it was made in a lucid interval. I may have said (for such was then and still is my opinion) that there was not sufficient evidence to induce them to believe that the deceased was not of sound mind at any time before his death ; and the (act is not correct, that Dr. Wragg gave it as his opinion that he was insane ; for he expressly says, “ he saw no evidence of delirium, but believes him to he too near the article of death to make a legal will.” In his legal opinion he was incorrect; but as to the • soundness of intellect, his opinion is entitled to great weight, and added to that of Verner, I think, is conclusive on the subject of his sanity. What is the evidence of Bird ? He did not believe him to be in his right mind. Why ? First, from his misery and restlessness ; and because when Palmer asked him, if he had disposed of his property, he replied “ no and muttered some other words in a tone of voice toó indistinct to be understood. No rule is better established than that the opinion of a witness is not evidence unless he assigns satisfactory reasons for the opinion ; unless he be a man of science and his evidence is on a scientific subject, in which he is versed. Now what are Bird's reasons ? The first is, because he was in misery and restless. This surely is not a satisfactory reason; for many a pian suffers *437 ..greatly and yet preserves the full exercise of his mind. What is the' second reason? Because he said “no,” when asked if he had disposed of his property. Now it is to be recollected that this was on the 2nd of April, the day before he made his will. He had not then disposed of it. This answer was both rational and true ; and yet furnished a ground of belief that the deceased was. insane ? His last reason is little better: Because he muttered some words in a tone of voice too indistinct to be understood. ■ This may have proceeded from an unwillingness to speak, or a feeble state; both of which may have existed without insanity. His testimony then, does not prove the insanity of the deceased. White says, the deceased appeared to be out of his senses, but does not state any facts by which a jury could be induced to rely on the evidence.
On the third ground, the charge to the jury was correct. They were instructed that it was not necessary that two witnesses should attest the signature of the testator, or even be present at the execution of a will which was signed by the testator ; but that if they believed Verner and Jlearlly, the one of whom drew the will and saw it executed, and the other proved the hand writing of the testator, and the witnesses who swore to his declared intention' to leave his property to Iielmes that the law was satisfied. In Roberts on Wills, 194, speaking of the civil law rule which requires two witnesses, he says, and such witnesses must he able at least to depose that the testator declared the writing produced to be his last will and testament; unless where the will or codicil was written by the testator himself, in which case the validity thereof may be established upon proof of the hand writing only, but it ought to be the evidence of such as have seen him write. Swinburne, (1 vol. p. 11,) says, “ so that with us it is sufficient to the effect of executing the testament, that the will and mind of the testator do appear,” And in a note on tins, a will written in the testators hand, having neither name nor seal to it, nor witnesses present at the publication, is *438 good, provided sufficient proof can be had of the hand writing, and though written in another man’s hand and never signed by the testator, yet if proved to be according to- his intentions and approved by him, has been held a good testament of personal estate. He refers to Comyn 452. Bracton 61. Fleta 125. Glanville, lib. 7, chap. 6,. And in 2 Swinburne, 639, concerning the last question., whether it be necessarry that there be witnesses of a written will, this is the answer : That if it be certain and un* doubted that the testament is written or subscribed with the testator’s own hand, in this case, the testimony of witnesses is not necessary ; and in a note on this he refers to Godolph, Gilbert Rep. Eq. 260, that even if not signed, it may be good.
On the fourth ground, it is clear, that the law requires no particular or set form of words to constitute a will. (Ante 409.) “ A testament, says Swinburne, is a just sentence of our will touching that we would have done after our death.” But it was contended that it must appear on the face of .the paper to have been intended to be a will; and that no parol proof could be produced to show the intention of the testator. Now it often occurs that a paper which on its face does not purport to be a will, is from circumstances considered as one ; and no circumstance can be more conclusive than its being made on a death bed. Swinburne (1 vol. 18,) in speaking of the animus testandiy “ which mind and purpose must be proved. by circumstances, (for words alone are not sufficient,) as that he set himself seriously to making his will, being then perhaps very sick or requiring others present to bear witness,” &c. &c. (Touchstone 404.) It is the mind and not the words which doth give life to the testament. But where these circumstances are wanting and the paper does not purport to be a will, it will be so construed if it cannot be supported as any other disposition of property; ut res magis valeat quamper eat.
In the case of Thorold and Thorold, Sir John Nichol says, (in deciding whether the instrument can be consid *439 ered as testamentary,) the court always looks to the substance and not to the form, to the intention of the writer and not to the denomination he affixed to it,- and this ‘was called by the writer a deed of gift. So in the case of Corp and Corp, and a number of other cases cited in the argument of that case ; (also, 1 Swinburne, p, 74.)
Now here is no consideration expressed, no delivery made. These are essential to constitute a deed. This then is. not a deed. It may have been destroyed by the deceased had he lived ; it therefore partook ol the quality of a will in this. If then it had been found among the deceased’s’ papers, there is enough on the face of it to have induced,a court to support it as a will. But with the abundant proof, both as to the animo testandi and the execution of the paper, there can be no doubt on the case.
The motion is dismissed.
J ustices Nott, Huger and Richardson, concurred.